1
2
3
4
5
6
7
8

```
                                    ┌─────────────────────────────┐
                                    │           FILED             │
                                    │  CLERK, U.S. DISTRICT COURT │
                                    │                             │
                                    │          6/11/24            │
                                    │                             │
                                    │ CENTRAL DISTRICT OF CALIFORNIA │
                                    │ BY: _____mz_____ DEPUTY │
                                    └─────────────────────────────┘
```

9   Miesha Shakes
    321 Western Ave
10  Glendale, CA 91201
    (310) 497-7373
11
    Mieshashakes@yahoo.com
12  Miesha Shakes, IN PRO PER

13

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17

18  AMERICAN BANKERS INSURANCE          ) Case No. 2:24-cv-02804
    COMPANY OF FLORIDA                  )
19                                      ) **DEFENDANT MIESHA SHAKES**
                                        ) **NOTICE OF MOTION AND**
20                      Plaintiff(s),   ) **MOTION TO**
                                        ) **COMPEL ARBITRATION AND**
21        vs.                           ) **DISMISS OR STAY THIS CASE;**
                                        ) **MEMORANDUMOF POINTS AND**
22  MIESHA SHAKES, KEVIN HART, and      ) **AUTHORITIES IN SUPPORT**
                                        ) **THEREOF**
    K, HART ENTERPRISES INC.            )
23                                      ) Assigned to the Hon. R. Gary Klausner
                                        )
24                      Defendant(s).   )
                                        )
25                                      )
                                        )
26  _____ )

27

28
                            - 1 -
    Defendant Miesha Shakes Motion to Compel Arbitration

TO ALL PARTIES AND THEIR COUNSE OF RECORD:

PLEASE TAKE NOTICE that on July__, 2024 at _:__   or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner of the above entitled United States District Court, Defendant Miesha Shakes ("Shakes") will hereby move this Court pursuant to 9 USC sections 4 and 5, for an order to compel Plaintiff, American Bankers Insurance Company of Florida ("ABIC") to arbitrate its claims in this action against Miesha Shakes and dismiss or stay the action.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all records on file with this Court, and such further oral and written argument as may be presented at, or prior to, the hearing on this matter.   This motion is made following the attempt of Shakes to have a conference with opposing counsel pursuant to L.R. 7-3.   Shakes called ABIC via telephone four times, left messages and sent an email on Tuesday, May 28, 2024.

DATED: June 5, 2024

 _/s/ Miesha Shakes_____
MIESHA SHAKES
IN PRO PER Defendant

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND BACKGROUND

On April 5, 2024, Plaintiff, American Banker Insurance Company of Florida's ("ABIC") filed a Complaint for Declaratory Relief ("Complaint") against this Defendant, Miesha Shakes and others. ABIC alleged that it was seeking "a declaratory judgment and adjudication concerning the rights, obligations, and liabilities of the parties under a certain insurance policy issued by ABIC to Defendant Miesha Shakes ("Shakes")"[1]

Shakes entered into an insurance policy agreement ("policy") with ABIC of which the following arbitration clause was included:

### ARBITRATION PROVISION

As used in this Arbitration Provision, "You' and "Your" mean the policyholder or policyholders, insureds, or additional insureds, and all of his/her heirs, survivors, assigns and representatives. "We" and "Us" mean American Bankers Insurance Company of Florida.
Any and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise), including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable claim) arising out of, relating to, or in connection with (1) this Policy or Certificate or any prior Policy or Certificate issued by Us to you…or (3) the validity, scope, interpretation, or enforceability of this Provision or of the entire Policy or Certificate ("Claim"), shall be resolved by binding arbitration before a single arbitrator. Unless You and We mutually agree on an alternative, the arbitration will take place in the county and state where You live. All arbitrations shall be administered by the American Arbitration Association ("AAA") in accordance with its Expedited Procedures of the

---

[1]  PageID #1¶ 1

Commercial Arbitration Rules of the AAA in effect at the time the
Claim is filed… This provision shall continue in full force and effect
subsequent to and notwithstanding the expiration of termination of this
Policy or Certificate.
**YOU AND WE UNDERSTAND AND AGREE THAT BECAUSE
OF THIS ARBITRATION PROVISION NEITHER YOU NOR WE
WILL HAVE THE RIGHT TO GO TO COURT EXCEPT AS
PROVIDED ABOVE OR TO HAVE A JURY TRIAL OR TO
PARTICIPATE AS ANY MEMBER OF A CLASS OF
CLAIMANTS PERTAINING TO ANY CLAIM.**

**[Exhibit 1] and [Exhibit 2]**

The applicable arbitration clause is attached hereto as Exhibit 2.  Shakes, moves this Honorable Court to compel arbitration and stay this action pursuant to the arbitration agreement between ABIC and Shakes.

## II. ARGUMENT

**A. Applicable Legal Standard**

A party may petition a district court to compel the enforcement of an arbitration agreement. 9 U.S.C. § 4. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. § 2. The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono* v. *Shearson Lehman Hutton Inc*., 514 U.S. 52, 3 53-54 (1995). The FAA represents a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Accordingly,

courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *Id*. Notwithstanding the "liberal policy" favoring arbitration, agreeing to arbitrate "is a matter of contract[, ] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs*., *Inc*. v. *Commc'ns Workers of Am*., 475 U.S. 643, 648 (1986). Therefore, courts must enforce arbitration agreements according to their terms. *Volt Info. Scis*., I*nc*. v. *Bd*. of *Trs*. *of Leland Stanford Junior Univ*., 489 U.S. 468, 479 (1989).

**B.  ABIC's Claims Against Shakes Falls Within the Scope of the Arbitration Agreement and the Arbitration Clause is Enforceable**

As set forth in the applicable arbitration language, ABIC's claims are well within the scope of the Arbitration Agreement:

> Any and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise), including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable claim) arising out of, relating to, or in connection with (1) this Policy or Certificate or any prior Policy or Certificate issued by Us to you…or (3) the validity, scope, interpretation, or enforceability of this Provision or of the entire Policy or Certificate ("Claim"), shall be resolved by binding arbitration before a single arbitrator. **[Exhibit 2]**

*See Shakes Declaration Exhibit 1*

The Arbitration Clause further provides that "the arbitration will take place in the county and state where You live" [Exhibit 2 ¶ 3]. Under California law, the Arbitration Agreement is valid and enforceable and therefore required ABIC to arbitrate its claims.

1

2

3

**C.  This Action Should be Dismissed or Stayed Pending Arbitration**

4

Shakes requests that this case be dismissed or in the alternative stayed pending the

5

mandatory arbitration.

6

### III. CONCLUSION

7

8

For the foregoing reasons, Shakes respectfully requests that the Court issue an order

9

compelling ABIC to arbitrate its claims against Shakes and dismissing this action or

10

in the alternative staying this action until the conclusion of arbitration.

11

12

13

_/s/ Miesha Shakes_

14

MIESHA SHAKES
IN PRO PER Defendant

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Miesha Shakes
321 Western Ave
Glendale, CA 91201
(310) 497-7373

Mieshashakes@yahoo.com
Miesha Shakes, IN PRO PER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA

                  Plaintiff(s),

    vs.

MIESHA SHAKES, KEVIN HART, and

K, HART ENTERPRISES INC.

                Defendant(s).

Case No. 2:24-cv-02804

**DECLARATION OF DEFENDANT MIESHA SHAKES IN SUPPORT OF HER MOTION TO COMPEL ARBITRATION AND STAY THIS CASE; MEMORANDUMOF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Assigned to the Hon. R. Gary Klausner

- 1 -

I, Miesha Shakes, declare as follows:

1.      I am more than 18 years old and have personal knowledge of the facts within the Declaration and, if called upon, I could and would competently testify to such facts under oath. I submit this Declaration in support of Defendant Miesha Shakes' Motion to Compel Arbitration and Stay this Case.

2.      I am a Defendant in this case.

3.      I secured a renters insurance policy with Geico Insurance Agency LLC, which was underwritten by American Bankers Insurance Company of Florida and the policy has been automatically renewed every year.

4.      The policy underwritten by American Bankers Insurance Company of Florida was emailed to me directly and is attached as Exhibit 2.

5.      The American Bankers Insurance Company of Florida's policy included an arbitration clause.

6.      Based on the policy, I believe that any disputes related to the rental insurance policy should be arbitrated.

I declare under penalty of perjury under the laws of California that the forgoing is true and correct. Signed this 7th day of June 2024 in Los Angeles, California.

/s/
MIESHA SHAKES
IN PRO PER Defendant

# EXHIBIT 2

<u>IMPORTANT NOTICE</u>

The coverages provided by a Renter's Policy can vary greatly according to the forms attached to the basic policy. Please read your policy carefully to be sure it provides the coverage you want.

# **Renters Insurance Program**

**American Bankers Insurance Company**

**of Florida**

A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596 • 305.253.2244

AJ8850PC-0307

# Renters Insurance Program

## POLICY INDEX

Page

AGREEMENT ..................................................................2

DEFINITIONS ...............................................................2

SECTION I - PROPERTY COVERAGES ...........................3-6

    Coverage C - Personal Property ............................3-4
    Coverage D - Loss of Use ......................................4
    Additional Coverages .........................................4-6
        Debris Removal ................................................4
        Reasonable Repairs ..........................................4
        Trees, Shrubs and Other Plants............................4
        Fire Department Service Charge ........................4-5
        Property Removed.............................................5
        Credit Card, Fund Transfer Card, Forgery
         and Counterfeit Money...................................5
        Loss Assessment ..............................................5
        Collapse .......................................................5-6
        Glass or Safety Glazing Material.........................6
        Building Additions and Alterations......................6
        Ordinance or Law ............................................6

SECTION I - PERILS INSURED AGAINST ....................6-7

SECTION I - EXCLUSIONS ........................................7-8

SECTION I – CONDITIONS ......................................8-10
    Insurable Interest and Limit of Liability ...................8
    Your Duties After Loss.........................................8-9
    Loss Settlement....................................................9
    Loss to a Pair or Set ..............................................9
    Glass Replacement ...............................................9
    Appraisal............................................................9
    Other Insurance ..................................................9
    Action Against Us.................................................9
    Our Option .........................................................9
    Loss Payment ......................................................9
    Abandonment of Property......................................9
    No Benefit to Bailee  ............................................9
    Nuclear Hazard Clause .........................................9

Page

Recovered Property....................................................9
Volcanic Eruption Period ...........................................9
Loss Payee ...............................................................9

SECTION II – LIABILITY COVERAGES............................10
    Coverage E - Personal Liability...............................10
    Coverage F - Medical Payments to Others..............10

SECTION II – EXCLUSIONS ...............................10-12

SECTION II – ADDITIONAL COVERAGES.................12-13
    Claim Expenses ................................................12
    First Aid Expenses............................................12
    Damage to Property of Others ...........................12-13
    Loss Assessment ..............................................13

SECTION II – CONDITIONS ...............................13
    Limit of Liability ...............................................13
    Severability of Insurance ...................................13
    Duties After Loss ..............................................13
    Duties of an Injured Person ..............................13-14
    Payment of Claims ............................................14
    Action Against Us..............................................14
    Bankruptcy of an Insured....................................14
    Other Insurance ...............................................14

SECTIONS I AND II - CONDITIONS................................14
    Policy Period ....................................................14
    Concealment or Fraud .......................................14
    Liberalization Clause .........................................14
    Waiver or Change of Policy Provisions ..................14
    Cancellation .................................................14-15
    Nonrenewal .....................................................15
    Assignment .....................................................15
    Subrogation .....................................................15
    Death .............................................................15

IMPORTANT NOTICE ..................................................16

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in items **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   If the entity named on the Declarations Page is a "business" entity, "insured" means any person while residing at the "residence premises" with the permission of the named insured.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **3.a.** or **3.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in **3.a.** or **3.b.** above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in **4.a.** and **4.b.** above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premise occasionally rented to an "insured" for other than "business" use.

   If the named insured is a "business" entity, the "insured location" is limited to the "residence premises".

5. "Landlord" means:

   The owner or property manager of the "residence premises".

6. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage".

7. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

8. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured".

9. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where the "insured" resides and which is shown as the "residence premises" in the Declarations.

## SECTION I - PROPERTY COVERAGES

**COVERAGE C – Personal Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms and related equipment.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises", used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises", used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits **10.** and **11.** below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this item **10.**

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this item **11.**

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

    a. Their equipment and accessories; or

    b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

       (1) Accessories or antennas; or

       (2) Tapes, wires, records, discs or other media;

       for use with any electronic apparatus described in this item **3.b.**

       The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

    We do cover vehicles or conveyances not subject to motor vehicle registration which are:

    a. Used to service an "insured's" residence; or

    b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                                   Page 3

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured";

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

   a. Books of account, drawings or other paper records; or

   b. Electronic data processing tapes, wires, records, discs or other software media.

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D – Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   > **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1**. and **2**. above for no more than two weeks.

The periods of time under **1**., **2**. and **3**. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in **SECTION I – CONDITION 2.d.**

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises", Vandalism or malicious mischief or Theft.

   We will pay up to 10% of the limit of liability that applies to Coverage C for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

**a.** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**b.** Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**c.** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**d.** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

**a.** By a resident of your household;

**b.** By a person who has been entrusted with either type of card; or

**c.** If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured".

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

**a.** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**b.** If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

**c.** We have the option to defend at our expense an "insured" or an "insured's" bank against any

suit for the enforcement of payment under the Forgery coverage.

**7. Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under **COVERAGE C – PERSONAL PROPERTY**, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition **1.** Policy Period, under **SECTIONS I AND II – CONDITIONS**, does not apply to this coverage.

**8. Collapse**

**a. With respect to this Additional Coverage:**

**(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** Perils Insured Against in Coverage C - Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                              Page 5

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **(2)**, **(3)**, **(4)**, **(5)** and **(6)** unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

   **a.** We cover:

   **(1)** The breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions and Alterations; and

   **(2)** The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions and Alterations; and

   **(3)** The direct physical loss to covered property caused solely by the pieces, fragments, or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

   **b.** This coverage does not include loss:

   **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

   **(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

   Loss to glass covered under this **ADDITIONAL COVERAGE 9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

10. **Building Additions and Alterations.** We cover under Coverage C the building improvements or installations, made or acquired at your expense, to that part of the "residence premises" used exclusively by you. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage C.

    This coverage is additional insurance.

11. **Ordinance or Law.**

   **a.** You may use up to 10% of the limit of liability that applies to Building Additions and Alterations for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

   **(1)** The construction, demolition, remodeling, renovation, or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

   **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

   **(3)** The remodeling, removal, or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair, or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair, or replacement of property as stated in **a.** above.

   **c.** We do not cover:

   **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

   This coverage is additional insurance.

## SECTION I – PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in **SECTION I – EXCLUSIONS**.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet,

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                                         Page 6